By the Court.

Warner, J.,
delivering the opinion.
The plaintiffs in error have filed upon the record in this case, three assignments of error to the decision of the Court below.
First, that the protest of the notary was improperly admitted as evidence of notice, the giving of notice not being an official act.
[1.] The Act of 26th December, 1836, amendatory of the Act of 1820, declares,'" From and after the passage of this act, the certificates, protests, and other acts of notaries public, under the hand *493 and seal of such notary, in relation to the non-acceptance of any bill of exchange, draft, or other order, made for the payment of money or other thing, and also in relation to the non-payment of any bill of exchange, draft,¶ order, bond, or note, for the payment of money or other thing, shall be deemed and received by the several courts of law and equity in this State, as sufficient prima facie or presumptive evidence of the facts therein stated, without any other or further proof: Provided always, that nothing in this act shall prevent either party, plaintiff or defendant, from having the benefit of the testimony of such' notary, should they deem it necessary; and provided also, that the party relying on such notarial act, shall at the first term file in the court either a copy or the original of such protest or other acts.” Prince 215.
It iá objected, that the statute does not make the certificate of the notary evidence of notice, although it is made evidence of nonpayment ; and it is insisted that the giving of notice is not an official act. It is true the act does not in express terms declare that the certificate of the notary shall be evidence of notice; but the statute does declare, that the certificate of the notary shall be presumptive evidence of the facts stated therein, in relation to the non-acceptance of any bill of exchange, and also in relation to the non-payment of any bill of exchange, draft, order, bond, ormote, for the payment of money or other thing. The legislature must be presumed to have known the law relating to the non-payment of promissory notes, and the steps necessary to be taken to fix the liability of the indorser, for they were legislating upon that very subject matter.
The giving of notice to the indorser has a very intimate relation in the eye of the law, to the non-payment of the note by the maker, in order to hold the indorser liable for its payment; and the act declares that the certificate of the notary shall be presumptive evidence of the facts stated therein, in relation to the non-payment of the note. To hold the indorser liable in law for the payment of the note on the non-pa,ymeiit thereof by the maker, the giving of notice is a relative part of the duty of the holder, which necessarily follows from a demand and refusal.
The giving of notice, then, may be considered as coming within the intention of the legislature, when it has declared that the certificate of the notary shall be presumptive evidence of the facts stated therein, in relation to the non-payment of a promissory note. JBut independently of this view of the question, when we take into *494 consideration the old law, the mischief which the legislature intended to remedy by dispensing with the testimony of the notary, added to the fact of the contemporaneous construction which has been given to this statute by our courts, we have -no hesitation in declaring, as our judgment, that upon a fair construction of th.e statute, it was the intention of the legislature that the certificate of the notary should not only be presumptive evidence of the nonpayment of the note, but also presumptive evidence of notice to the indorser. The legislature intended to make the acts of the notary, so far as relates to the non-payment of promissory notes, including the notice thereof to the indorser, official, when certified under his hand and seal, in the manner prescribed by the act.
[2.] The second ground of error assigned is, that “ the protest of the notary was improperly admitted as evidence of notice, inasmuch as it did not state the places to which the notices were addressed.”
The notary states in his certificate, made a part of the record, that on the same day of the demand and refusal of payment by the maker, “ he deposited in the post office notices of non-payment for each of the indorsers, addressed to them at their respective places of abode.”
The Act of 1836, as we have already seen, makes the certificates, protests, and other acts of notaries public under their hand and seal, prima facie or presumptive evidence of the facts therein stated, in relation to the non-payment of a promissory note. The notary states that notice of non-payment was deposited in the post office, addressed to the indorsers at their respective places of abode.
This statement of the notary must be taken as prima facie true, and the notices directed where the law requires them to have been directed. The law required the notices to be directed to the indorsers, at their respective places of abode, if known, orto such places as they would be most likely to receive them, in the shortest and most practicable manner. The argument is, that the notary should have stated the particular place to which he addressed the notices.
The Court must look at the facts stated by the notary in his certificate, and pfonounce the law arising thereon. The facts are, that the notices were addressed to the indorsers at their respective places of abode. This address, in our judgment, was a compliance with the law, and made out a prima facie case for the plaintiff under the statute; the defendants having the right to controvert *495 the facts if they thought proper to do so, by examining the notary as a witness ; and for this purpose the act requires the certificate of the notary to be filed at the first term of the court. The notary has, in our judgment, stated the place to which the notices were addressed, and that place is, the abode of the indorsers. We are to understand that the notary did his duty, that he knew the residence <or abiding place of the indorsers, to which he states the notices were addressed.
Would the evidence have been any more satisfactory if the notary had stated that he had addressed the notices to a particular place, without stating that that particular place was the abode of the defendants 1 On having stated the particular place to which the notices were addressed, had he also added that such particular place was the abode of the defendants, which part of the statement would have made the notice available in law ? the statement of the particular place, or the statement of the notary that the particular place was the abode of the defendants? We are bound to take the statement of the notary as prima facie true, that the notice was properly directed to the indorsers, at their respective places of abode — that fact being stated in the certificate of the notary.
The third ground of error assigned is, that “ the notices to [3.] Walker and Rhodes, deposited in the post office at Augusta, wei'e insufficient to make them liable.”
It appears from the evidence of the notary, who was examined by the defendants in the Court below, that the notices to them were deposited by him in the post office at Augusta, not addressed to them at any post office, they being in the habit of receiving their letters and papers at Augusta. It was also proved, that Walker lived seven and a half miles from Augusta, and Rhodes twelve miles from Augusta, both in Richmond county; that there was a post office at the Richmond Factory, within two miles of one of them and three miles of the other; that they each took a weekly paper published in Augusta, which was deposited in the post office there; that they called at the post office in Augusta when they came to town, and sometimes sent there for their letters and papers, calling or sending at least once a week.
The decisions of the courts in the several States are in conflict, ‘as it regards depositing the notice in the post office, addressed to the party at the place of deposit; and we must be governed by those which, in our judgment, are best sustained by the principles of the commercial law applicable to this class of cases. The law *496 does not require the utmost possible diligence in giving notice of the dishonour of a note ; all that is required is ordinary reasonable diligence. The holder must give notice in such manner as is reasonably calculated to bring it to the knowledge of the indorser, without unreasonable delay. The defendants resided in the country, and there was a post office nearer to each of them than the Augusta post office; but we think the evidence contained in the record clearly establishes the fact, that they were in the habit of receiving their letters and papers through the Augusta post office. With a knowledge of this fact, had the holder transmitted the notice to the indorsers at the Richmond Factory, the nearest post office, but not the one through which they were in the habit of receiving their communications, and perhaps an office which they seldom visited, could it be said that the holder had used such diligence as was reasonably calculated to bring notice to the knowledge of the indorsers of the dishonour of the note, without unreasonable dela$ ? Was not the notice placed where, according to the evidence, the defendants would be most likely to receive it in the most expeditious and practicable manner through the agency of the post office ? They received their weekly papers at the Augusta office, called there for their letters and papers when they visited the city, and either called or sent there for them at least once a week. Suppose the holder of the note had resided in the city of Charleston at the time of its maturity, and knew that the defendants were in the habit of receiving^their letters and papers through the post office at Augusta, or could have ascertained that fact on reasonable inquiry, to which office ought the holder to have transmitted the notice ? to the office at the Richmond Factory, or the Augusta office ? Most certainly to the Augusta office; and for what reason ? because they would be most likely to receive the notice in the shortest practicable manner, and without unreasonable delay. The holder would have exercised due diligence in sending it there.
It is not indispensable that the notice to the indorser should be sent to the post office nearest to his residence; it is sufficient if ^t be sent to the office to which he usually resorts for his letters. Bank of Geneva vs. Plowlett, 4 Wend. R. 331; Reid vs. Payne, 16 Johns. R. 221.
On what principle is it, that the law allows the notice to be good when sent to the more remote post office from the residence of the indorser? Because the holder has used reasonable diligence *497 in ascertaining the place where the indorser usually resorts for Ms letters and papers, and has directed the notice to that place where it may be reasonably presumed he would receive it in the shortest period of time, and without any unreasonable delay. Let us now apply this principle of commercial law to the case before us. The defendants resided in the country, in the county of Richmond, and the Richmond Factory post office was nearest to them, but it does not appear from any evidence disclosed by the record, that either of them received their letters and papers from that office; but it does appear, that they were in the habit of receiving their letters and papers from the office at Augusta; that they usually resorted there for that purpose, or sent there at least once a week. At which office may it reasonably be presumed they would receive the notice in the shortest period of time, and without any unreasonable delay % at the office where they were in the habit of calling or sending for their letters on<;e a week, or at the office where it does not appear they ever resorted for that purpose 1
Independently of decided cases, we think the general principles' of commercial law applicable to this class of cases would constitute it a good notice and sufficient to bind the indorsers for the payment of the note. The notices were placed in the post office at Augusta, addressed to them there, at which place they were in the habit of receiving their letters and papers.
The argument for the defendants however is, that inasmuch as the notices were not to be transmitted by the mail, that the post office was not a proper place to deposit the notices, that the post office could only be employed as the agent for that purpose when the notices were to be forwarded to some other office than the one aft which they were deposited. Upon this point the authorities, as we have before stated, are in conflict.
The general rule with regard to giving notice of the dishonour of bills and notes, is, that where the parties reside in the same city or town, the notice must be personal, or by leaving it at the ■ dwelling house or place of business of the party, if absent f but if the indorser reside at a different place, then notice may be sent through the post office to the post office nearest to him, or to the one to which he usually resorts for his letters and papers. Story, in his commentaries on the law of promissory notes, states the rule to be, that “ If he (the indorser) resides in the country, on a plantation, in a county where there is no town, or where there are several county post offices, notice sent to the post office where he *498 is accustomed to receive his letters, if known, will be proper.” Story on Promissory Notes, 414, sec. 343. Where the parties live in the same town or city, the notice is good, if left at the dwelling house of the party in a way reasonably calculated to bring the knowledge of it home to him. 3 Kent. Com. 107.
Why is the notice good when left at the dwelling house or place of business of the indorser 1 Because it is left at a place where he usually resorts, and at a place reasonably calculated to bring the knowledge of it home to him. Why is the notice to the present defendants, who reside in the country, but who are in the habit of receiving their communications through the Augusta post office, good 1 Because they are in the habit of resorting to that office, or sending there once a week for their letters and papers, and a notice deposited there directed to them, is reasonably calculated-to bring the knowledge of such notice home to them in the shortest period of time, and without any unreasonable delay. The post master at Augusta had the legal and proper custody of the notices when deposited in his office, and was legally bound to deliver them to the persons to whom the same were addressed, and to charge the legal rate of postage thereon. The 36th section of the act of congress, 1825, declares, “For every letter lodged at any post office not to be carried by post, but to be delivered at the place where it is so lodged, the post master shall receive one cent of the person to whom it shall be delivered.” Gordon’s Dig. Laws U. S. 98. The post office at Augusta was a place where letters might have been deposited for delivery to the persons to whom the same were addressed, as well as those received by the due course of the mail. The defendants resided in the country, one, seven and a half miles, and the other, twelve miles from the city, and were.in the habit of resorting or sending to the post office at Augusta, at least once a week, for their letters and papers. This fact of itself negatives the idea, in the absence of any affirmative testimony, that the defendants received their letters and papers from the Richmond Factory post office.
The defendants did not reside in the city, nor did they have any place of business there. Was the holder bound to employ a special messenger for the purpose of giving them notice, when they were in the habit of resorting or sending to the city post office once a week for their letters and papers'! We do not think the law imposed such a duty upon the holder of the paper. In the case of the Bank of Columbia vs. Lawrence, 1 Peters R. 584, *499 the court say: “The holder may employ a special messenger if he pleases, but no case has been found, where the English courts have directly decided that he must. To compel the holder to incur such expense would be unreasonable, and the policy of adopting a rule that will throw such an increased charge upon commercial paper, on the party bound to pay, is at at best very questionable.” In view of the facts of this case, as disclosed by the record, we are of the opinion that the holder of the paper exercised due and reasonable diligence in depositing the notice in the post office, in the city of Augusta, addressed to the defendants there, that being the post office at which they were in the habit of receiving their letters and papers, and the place which was reasonably calculated to bring home to them the knowledge of the dishonour of the note, in the shortest practicable manner, and without any unreasonable delay.
The following cases are cited as authority for depositing the notices in the post office at Augusta, addressed to the defendants at that place. Foster vs. Sineath, 2 Rich. R. 338; Bank of Columbia vs. Lawrence, 1 Peters R. 578; Jones vs. Lewis, 8 Watts & Sergt. R. 14. These cases, we think, are based on the principles of commercial láw, and best adapted in our judgment, to give a practical effect to those principles when applied to the various commercial transactions of our people, residing as they frequently do at a distance from any town or city, and receiving their communications through the post office of such town or city.
Let the judgment of the Court below be affirmed.